MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
Tuyet T. Nguyen Lu, Bar No. 256431
tuyet.nguyen@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:  +1.213.612.2501

Attorneys for Defendant
WESTLAKE ROYAL STONE LLC, formerly known as BORAL STONE PRODUCTS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIA SERVIN, as an individual and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>vs.<br><br>WESTLAKE ROYAL STONE, LLC; BORAL STONE PRODUCTS, LLC; IRUNDY RAMOS; DARREN SCHULZ AND DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-06544<br><br>**DEFENDANT WESTLAKE ROYAL STONE LLC'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332(a), 1441, 1446 and 1453]<br><br>Complaint Filed: August 19, 2022 |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** Defendant Westlake Royal Stone LLC, formerly known as Boral Stone Products LLC ("Westlake"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Napa, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the following grounds:

## I.    PROCEDURAL BACKGROUND

1. On August 19, 2022, Plaintiff Elvia Servin ("Plaintiff") filed a putative class action complaint in the Superior Court of California, County of Napa, entitled *Elvia Servin, as an individual and on behalf of all similarly situated employees, v. Westlake Royal Stone, LLC; Boral Stone Products, LLC; Irundy Ramos; Darren Schulz And Does 1 through 50, inclusive*, Case No. 22CV000957 (the "Complaint").

2. Plaintiff personally served copies of the Summons, Complaint, and other documents[1] on the registered agent for service of process for Westlake and Boral Stone Products LLC on September 26, 2022. True and correct copies of the Summons, Complaint, and all documents served are attached as **Exhibit A**. Exhibit A constitutes all the pleadings, process, and orders served upon or by Defendant Westlake in the Superior Court action.

3. The Complaint seeks damages, penalties, and injunctive relief on behalf of a putative class for: (1) failure to pay all wages due, including regular and overtime wages; (2) failure to provide rest periods or premium compensation in lieu thereof; (3) failure to keep accurate payroll records and provide accurate itemized

---

[1] The documents served with the Complaint include a Civil Case Cover Sheet, Notice of Case Management Conference, and Alternate Dispute Resolution Packet.

wage statements; (4) failure to pay all wages earned and owed at separation of employment; and (5) unfair business practices. (Ex. A, Compl. ¶¶ 2, 34-84).

4. Plaintiff alleges all causes of action individually and on behalf all other similar situated employees defined as: "all individuals who worked for Defendants in a California location as non-exempt employees during the Class Period." (Ex. A, Compl. ¶¶ 25-26).

## II. REMOVAL IS TIMELY

5. This Notice of Removal is timely, pursuant to 28 U.S.C. sections 1446(b)(3) and 1453, because it is filed within 30 days of Plaintiff's service of the Summons and Complaint on Westlake. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

6. This lawsuit is a putative class action.[2] (Compl., ¶¶ 1, 25-33, Prayer for Relief ¶¶ 1-2). Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. sections 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendants; (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the FAC places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453.[3] Although Westlake denies Plaintiff's factual allegations and denies that Plaintiff—or the class she purports to represent—are entitled to the relief requested in the Complaint, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for

---

[2] Westlake denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Westlake further denies Plaintiff's claims and denies that she can recover any damages.
[3] Westlake denies Plaintiff's factual allegations and denies that Plaintiff and members of the putative class are entitled to any relief whatsoever.

jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists.

7. To establish CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

#### 1. Plaintiff is a Citizen of California.

8. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019. Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

9. In her Complaint, Plaintiff alleges that she was an employee of Defendant Westlake (formerly known as Boral Stone Products LLC) in Napa County, California from March 2021 through August 2021. (Compl., ¶ 8). Business records reflect that Plaintiff's last known home address on file is in American Canyon, California. The Complaint does not allege any alternative place of residence or state of citizenship for Plaintiff. Accordingly, Plaintiff was and is

domiciled in California and, therefore, is a citizen of California for purposes of removal. Plaintiff is not a citizen of Delaware or Texas.

### 2. Westlake is a Citizen of Delaware and Texas.

10. For purposes of establishing diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it has been incorporated and of the state where it has its principal place business. 28 U.S.C. § 1332(c)(1). Per 28 U.S.C. § 1332(d)(10), an unincorporated association is also deemed to be a citizen of the state where it has its principal place of business and under whose laws it is organized. The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

11. For CAFA diversity purposes, a limited liability company qualifies as an "unincorporated association" and so is, like a corporation, deemed to be a citizen of the state where it is organized and the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010) (holding that a limited liability company qualifies as an "unincorporated association" under Section 1332(d)(10) for purposes of CAFA removal); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (same); *Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, *2 (S.D. Cal. Feb 3, 2011) (same).

12. Westlake is organized under the laws of the State of Delaware. Westlake's principal place of business and corporate headquarters are in Texas, where its officers, direct, control, and coordinate corporate activities. Although not relevant to removal because Defendant Boral Stone Products LLC is now known as

Defendant Westlake, Boral was organized under the laws of the State of Delaware and had its principal place of business and corporate headquarters in Georgia. Westlake is not and Boral was not organized under the laws of the State of California, nor are their headquarters, executive offices, or officers based in California.

13. Westlake is now, and was at the time of the filing of this action, a citizen of Delaware and Texas for purposes of determining diversity jurisdiction under CAFA. Therefore, diversity of citizenship exists under CAFA because some members of the putative class, including Plaintiff, are a citizen of a state different than Westlake. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").[4]

### B.   The Putative Class Has More Than 100 Members.

14. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiff seeks to represent "all individuals who worked for Defendants in a California location as non-exempt employees during the Class Period")" (referred to by Plaintiff as the "Plaintiff Class"). (Compl., ¶¶ 1, 26). Based on Plaintiff's definition and according to Westlake's business records, the putative class contains over 700 non-exempt employees who are working or have worked for Westlake in California between August 19, 2018 and October 26, 2022. Thus, the putative class contains more than 100 members.

---

[4] Two individual defendants, Irundy Ramos and Darren Schulz, are listed in the caption of Plaintiff's Complaint. However, there are no material allegations against either of them as to Plaintiff's claims in the Complaint. In any event, neither CAFA's "local controversy" exception nor the "home-state" exception could possibly apply here, as another class action asserting the same or similar allegations against Westlake, entitled *Barajas v. Boral Stone Products LLC, now doing business as Westlake Royal Stone LLC,* N.D. Cal Case No. 4:22-cv-03863-VC (June 29, 2022), was filed during the three-year period preceding the filing of this action, and the "primary defendant," Westlake, is not a citizen of California.

### C. The Amount in Controversy Exceeds $5,000,000.[5]

15. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

16. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

17. The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the

---

[5] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Westlake refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Westlake maintains that each of Plaintiff's claims lack merit and that Westlake is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Westlake's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Westlake denies that this case is suitable for class treatment.

amount in controversy"); s*ee also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")  The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)*; see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

18.  The allegations in the removing defendant's notice of removal "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias*, 936 F.3d at 925 (9th Cir. 2019)).  Moreover, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42.  As the United States Supreme Court has advised, "no antiremoval presumption attends case invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87.

19.  In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for

the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x. 646, 648 (9th Cir. March 8, 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or damages sought").

20. While Westlake denies Plaintiff's factual allegations and denies that she or the putative Plaintiff Class she seeks to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that, when the potential value of the claims of Plaintiff and the putative Plaintiff Class members are aggregated, the allegations within the Complaint put more than $5 million into controversy.

**1. Plaintiff's First Cause of Action for Failure to Pay Minimum and Overtime Wages Places At Least $9,407,548.33 in Controversy.**

21. The Complaint alleges that during the class period, "Defendants failed to pay Plaintiff and the Plaintiff Class minimum wages for all hours worked and overtime premium for hours worked in excess of over eight (8) hours per day and/or forty (40) hours per week…" (Compl., ¶ 35). Specifically, Plaintiff alleges:

> Defendants required Ms. Servin and Plaintiff Class to work ten (10)-hour days for five (5) days (50 total hours) per workweek. Accordingly, Ms. Servin and Plaintiff Class were entitled to overtime pay for the two (2) additional hours worked for each the first four days of the workweek, as well as ten (10) hours of overtime for the last day of the workweek. Altogether, Ms. Servin and Plaintiff Class are entitled to receive eighteen (18) hours of overtime pay per week and thirty-six (36) hours of overtime pay per pay period. However, Defendants routinely compensated Ms. Servin and Plaintiff Class for fewer than ten (10) hours at the applicable overtime rate each pay period.

(Compl., ¶ 36).

22. Labor Code section 510 requires that any work "in excess of eight hours in one workday" must be compensated "at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). Labor Code section 1194 requires that any employee "receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation…" Cal. Lab. Code § 1194. The complaint seeks these damages on behalf of the putative Plaintiff Class "for four (4) years prior to filing this complaint…." (Compl., ¶ 47).

23. Westlake's review of personnel and payroll information indicates that there were approximately 71,240 total workweeks worked from August 19, 2018 through October 21, 2022 by current and former non-exempt employees in California. Westlake's information indicates that the average amount of overtime paid per workweek to such employees during this period was 5.89 hours, and that the average hourly rate of pay was $21.42. Plaintiff alleges that she and the putative Plaintiff Class were required to work "50 total hours" per workweek, which means she is claiming that she and the putative class worked a minimum of 10 overtime hours per workweek (the Complaint alleges that Plaintiff and the putative Plaintiff Class "are entitled to receive eighteen (18) hours of overtime pay per week," but for purposes of this Removal Westlake conservatively only assumes that Plaintiff is claiming a minimum of 10 overtime hours per putative class member per workweek). (Compl., ¶ 36). Therefore, pursuant to Plaintiff's allegations in the Complaint, she is seeking at least 4.11 hours of unpaid overtime per workweek on average for the putative Class (10 claimed overtime hours worked per workweek – 5.89 overtime hours paid= 4.11 hours). Plaintiff's first cause of action therefore places at least **$9,407,548.33** in controversy: $21.42 per hour x 1.5 overtime rate x 4.11 hours x 71,240 workweeks = $9,407,548.33. Based on

Plaintiff's allegations, the amount placed in controversy has therefore exceeded the threshold for CAFA removal with the overtime claim alone.

### 2. Plaintiff's Second Cause of Action for Failure to Provide Rest Periods Places at Least $3,700,658.43 in Controversy.

24. Plaintiff's Complaint includes allegations that Defendant failed to provide statutorily required rest periods to Plaintiff and the putative Plaintiff Class and did not provide premium payments for unprovided rest periods. (Compl., ¶¶ 3, 20, 21, 36, 46, 51-52). Specifically, Plaintiff alleges that Plaintiff and the putative Plaintiff Class "**regularly** worked through rest breaks," that "Defendants frequently denied Ms. Servin and Plaintiff Class a rest period," that Plaintiff and the putative Plaintiff Class "were **routinely required** to work through their rest breaks," and that they "**consistently** worked over four (4) hours per shift with no rest breaks, due to Defendant's uniform policies and practices." (Compl., ¶¶ 20, 36, 46, 51) (emphasis added). Although Westlake denies these allegations, Plaintiff's rest period violation theory is that the putative class members were regularly, frequently and consistently not provided with rest periods due to Westlake's alleged "uniform policies and practices."

25. Plaintiff further alleges that Westlake "never paid [the putative Plaintiff Class] a premium for missing their rest period, and that they "are entitled to damages in an amount equal to one (1) hour of wages per missed rest break," and they also seek such amounts as restitution "during the four-year period prior to the filing of this complaint." (Compl., ¶¶ 36, 53, 81).

26. Based on Plaintiff's allegation that pursuant to Westlake's "unlawful policies and practices," Plaintiff and the putative Plaintiff Class members were regularly, frequently, and consistently required to work through their rest breaks, (Compl. ¶¶ 20, 46, 51), Westlake could reasonably assume the Complaint alleges a 100% violation rate for rest period claims when calculating the amount placed in controversy as to this class claim. *See Mejia v. DHL Express (USA), Inc.*, 2015 WL

2452755, at *4 (C.D. Cal. May 21, 2015) (upholding application of 100% violation rate and explaining that "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly adopted and maintained, then the company may potentially violate the law in each and every situation where those policies are applied"); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (finding the plaintiff "include[d] no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%"). However, for purposes of removal, Westlake makes a more conservative assumption that Plaintiff is alleging a 50% rest period premium violation rate per shift of 3.5 hours or more per putative class member. See, e.g., *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (upholding the defendant's assumption of a 50% violation rate where complaint alleged violations "sometimes" due to a "policy or practice of not paying additional compensation" for breaks that were not provided).

27.  Westlake's review of payroll information shows that between August 19, 2018 and October 21, 2022, current and former non-exempt employees in California worked approximately 345,533 shifts of at least 3.5 hours. The average hourly rate of pay for non-exempt employees during this period was $21.42. Westlake therefore calculates that Plaintiff's rest period claim places in controversy at least $3,700,658.43 (345,533 shifts x .5 x $21.42 for one hour of claimed premium pay per shift).

### 3.      The Amount in Controversy Exceeds $5 Million

28.  Aggregating the figures above for just these two causes of action, the allegations in the Complaint put in controversy at least **$13,108,206.80** (**$9,407,548.33**+ **$3,700,658.43**).  Thus, the CAFA jurisdictional requirement of $5 million is satisfied based on these claims alone, even without assessing the value of Plaintiff's remaining causes of action or her request for attorneys' fees.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 44298605.3

12

NOTICE OF REMOVAL

### 4. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

29. Plaintiff seeks attorneys' fees on all claims under various provisions of the Labor Code. (Compl., ¶¶ 48, 53, 63, 84; Prayer for Relief, ¶ 10). When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

30. The Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Fritsch*, 899 F.3d at 795 and 796, fn. 6. Courts have used the 25% benchmark to calculate potential fees for purposes of the CAFA amount in controversy. *See, e.g.*, *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *8 (C.D. Cal. Jan. 6, 2016); *Oda*, 2015 WL 93335, at *5-6. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes.").

31. Plaintiff's counsel has previously presented to courts, via fee motions in class actions, attorneys' fee awards ranging from $421,729.50 to $3,133,333.33, representing 25% to 33% of the common fund. Although Westlake denies Plaintiff's claim for attorneys' fees, using 25% of the amount in controversy in this

case, the inclusion of "reasonable" attorneys' fees for purposes of removal would add at least another $3,277,051.70 in attorneys' fees, bringing the total amount in controversy to at least **$16,385,258.50** ($13,108,206.80 as shown above x .25 = $3,277,051.70 in attorneys' fees).

32. Even if the 25% benchmark is not used, it is reasonable to assume that Plaintiff's potential future attorneys' fees place more than an additional $1,000,000 in controversy. Plaintiff's lead counsel has repeatedly presented to courts in class and representative action fee motions filed in the past four years that his hourly rate is $750, and courts have awarded over $1 million in attorneys' fees in the settlement of wage-and-hour class actions in at least two cases involving Plaintiff's counsel. *See, e.g.*, Defendant's Request for Judicial Notice ("RJN"), ¶¶ 1-4, Exhs. 1, 2 (hourly rate of $750 and awarding over $1,000,000 in attorneys' fees and costs), Exhs. 3, 4 (awarding over $1,000,000 in attorneys' fees and costs), Exh. 5-8 (hourly rate of $750). Also, a pending fee motion filed by Plaintiff's lead counsel seeks $3,133,333.33 in attorneys' fees. *See* RJN, Exhs. 9, 10.

33. Therefore, although Westlake has plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

     **5.    Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.**

34. As shown above, using conservative and reasonable assumptions grounded in the allegations of the Complaint to calculate the amount in controversy, Westlake has demonstrated that Plaintiff's overtime and rest period claims, as well as her request for attorneys' fees, place more than $5 million in controversy. However, in addition to this amount, Plaintiff's other causes of action place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold. As enumerated in Section I, Plaintiff brings additional causes of action

on behalf of some of the putative class members for statutory penalties for Westlake's alleged failure to issued itemized wage statements and maintain records (Third Cause of Action), and to pay all wages due at separation of employment (Fourth Cause of Action).  Each of these causes of action for statutory penalties places additional amounts in controversy beyond Plaintiff's First and Second Causes of Action as well as any request for attorneys' fees based on these other causes of action.

## IV. VENUE

35.  This action was originally filed in the Superior Court for the County of Napa.  Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## V. NOTICE

36.  Westlake will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

Based on the foregoing, Westlake requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Westlake respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated:  October 26, 2022           MORGAN, LEWIS & BOCKIUS LLP

By  /s/ *John S. Battenfeld*
John S. Battenfeld
Tuyet T. Nguyen Lu
Attorneys for Defendant
WESTLAKE ROYAL STONE LLC, formerly known as BORAL STONE PRODUCTS LLC